**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher C. GARDNER,
Defendant–Appellant.**

No. 89–3401
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1990.

Rehearing Denied March 5, 1990.

Frank G. DeSalvo, New Orleans, La., for defendant-appellant.

Robert J. Boitman, Asst. U.S. Atty., John P. Volz, U.S. Atty., and Walter F. Becker, Jr., Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Christopher Gardner pleaded guilty to two counts of violating 18 U.S.C. § 1001 (knowingly concealing a material fact from an agency of the United States as to a matter within the jurisdiction of that agen-

cy). The guilty plea was conditioned upon the government dismissing twelve additional counts and with Gardner reserving his right to appeal the denial of his motion to dismiss the superseding indictment. Gardner appeals contending that his actions do not constitute a violation of federal law. We affirm.

I.

On January 12, 1989, a ten-count indictment was returned against Gardner. This indictment charged Gardner with ten violations of 18 U.S.C. § 545, smuggling ten used foreign-made automobiles into the United States by means of false documents. On February 24, 1989, a fifteen-count superseding indictment was returned charging the appellant with, among other things, ten violations of 18 U.S.C. § 1001, knowingly concealing a material fact from an agency of the United States government as to a matter within the jurisdiction of the agency.[1] Gardner filed a motion to dismiss the superseding indictment on April 14, 1989. The matter was referred to a magistrate who issued a report recommending that Gardner's motion be denied. The trial court adopted the magistrate's report and denied Gardner's motion on June 7. Also on June 7, Gardner pleaded guilty to counts one and two of the superseding indictment. The government agreed to dismiss the remaining counts against Gardner and Gardner reserved his right to appeal the denial of his motion to dismiss.

II.

A. *Background*

The Clean Air Act[2] ("Act") generally prohibits the importation of motor vehicles unless they are covered by a "certificate of conformity" with federal air pollution emission requirements. "Conforming" vehicles

---

1. Counts 1–10 also charged Gardner with violating 18 U.S.C. § 1002, knowingly possessing false documents for the purpose of enabling another to obtain money from the United States. Counts 11–14 charged Gardner with violating 18 U.S.C. § 496, using falsely altered Customs forms to obtain certificates of title to the auto-

mobiles. In addition, count 15 charged Steven Bernstein with violating 18 U.S.C. § 496. Bernstein pleaded guilty and has not appealed. The points raised by Gardner on appeal involve only § 1001. Our discussion is limited accordingly.

2. 42 U.S.C. §§ 7401–7642.

satisfy the applicable air pollution emission requirements; "nonconforming" vehicles do not. To import a "nonconforming" vehicle, the vehicle must be modified to meet the applicable emission standards unless the vehicle is specifically excluded from the Act or is granted an exemption by the Environmental Protection Agency ("EPA"). *See generally* 42 U.S.C. § 7522.

Importers of nonconforming vehicles were required to file EPA Form 3520–1, "Importation of Motor Vehicles and Motor Vehicle Engines Subject to Federal Air Pollution Regulations," with the United States Customs Service ("Customs") and to post a bond equal to the value of the vehicle plus the applicable duty. *See* 19 C.F.R. § 12.73(c) (1986); 48 Fed.Reg. 16485, 16486 (1983); United States EPA, *Automotive Imports Fact Sheet* (Oct. 1985) at 5. EPA Form 3520–1 was automatically forwarded by Customs to the EPA. The importer had ninety days to bring the vehicle into conformity with federal emissions requirements. 48 Fed.Reg. at 16486. Failure to do so would result in the bond being forfeited and the car being claimed by Customs. *Id.*

In 1981, the EPA adopted a policy whereby first time importers of a nonconforming vehicle would be exempt from the conversion requirements if the vehicle was five model years old or older, if the importer was an individual importing the vehicle for the first time, and if the vehicle was intended for the importer's personal use. *See id.* at 16486–87. Based on the information in Form 3520–1, the EPA would determine whether to grant this one-time exemption from the air pollution standards. If an exemption was granted, the EPA would direct Customs to release the bond that had been posted by the importer.[3]

---

**3.** In September 1987 the EPA drastically revised its regulations governing the importation of nonconforming vehicles. Among other things, the new regulations abolished the personal use exemption adopted by the EPA in 1981. *See Anderson Shipping Co. v. E.P.A.*, 852 F.2d 1387, 1387–89 (D.C.Cir.1988). The charged acts occurred prior to the EPA's revisions. This case is therefore decided under pre–1987 law.

## B. *The Scheme*

Gardner operated a business in New Orleans, Louisiana known as the West German Trading Company where he sold Mercedes Benz and BMW automobiles that had been imported from West Germany. Gardner would arrange the purchase of foreign cars that were five years old or older. He then would pay individuals $50 each to use their names as the importers of the cars on the Customs Forms and EPA Form 3520–1. The named importers were eligible to obtain the one-time personal use exemption from the EPA and thereby avoid the cost of modifying the vehicle. Gardner then sold the cars without performing the expensive conversion work.

## III.

After setting-forth the importation scheme generally described in the preceding section of this opinion, the superseding indictment specifically charges Gardner as follows:[4]

### COUNTS 1–10

On or about the dates listed below ... CHRISTOPHER C. GARDNER, did knowingly and willfully falsify, conceal, and cover-up by trick, scheme, and device material facts in a matter within the jurisdiction of the United States Customs Service, an agency of the United States; in that he submitted, and caused and aided and abetted the submission of Customs Forms ... and EPA Declaration Forms 3520–1, for the purported purpose of importing non-conforming Mercedes Benz and BMW automobiles into the United States on the behalf of the individual owner/importer listed below, when in truth and fact as he then well

---

**4.** During his rearrainment Gardner explained to the court that he was not the owner of the vehicles. Following the discussion between Gardner and the court, the United States Attorney moved to amend the superseding indictment, deleting the word "owner" as it applied to Gardner and indicating Gardner only as the importer. The court apparently granted the motion and accepted Gardner's guilty plea on counts one and two.

knew, the listed importer had no ownership interest in the automobile imported into the United States, rather, the defendant CHRISTOPHER C. GARDNER being the true owner and importer ...

Counts 1–10 of the superseding indictment then identifies, respectively, 10 different individuals as "straw importer/owner," the identification number and model year of the vehicles imported, their entry number, and the date of import. Counts 1–10 concludes by stating that these activities violate 18 U.S.C. §§ 1001 and 1002.[5]

Gardner contends that his actions do not constitute a violation of the law because 18 U.S.C. § 1001 can be violated in this case only if the individual importers named in counts one and two of the superseding indictment (Leslie Tilly and Keith Tilly) were not properly listed as importers under the Tariff Act of 1930.[6] Gardner argues that the named importers are properly listed because, contrary to the charges in the indictment, an importer need not be the owner of the imported merchandise.[7]

In its minute entry of June 9, the trial court noted that the basis for Gardner's argument is his

contention that an importer need not have an ownership interest in the item imported. If defendant is correct, counts 1–10 should indeed be dismissed, since they are predicated on the fact that defendant used individuals who had no

ownership interest as the vehicles' importers and that it was illegal to do so. The trial court, relying in part on the Ninth Circuit's interpretation of 19 U.S.C. § 1484 in *Azurin v. Von Raab*, 803 F.2d 993 (9th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3264, 97 L.Ed.2d 763 (1987), concluded that to properly be an importer an individual "must have some type of ownership interest in the vehicle either as actual owner or purchaser."

In its brief on appeal the United States does not directly pursue the line of reasoning employed by the trial court. Rather, the United States argues that because the nonconforming vehicles were restricted items for purposes of importation

it was a material fact within the ambit of 18 U.S.C. § 1001 for Customs to know that these listed consignees/importers did not have any legal or financial interest in these vehicles. Had Customs known that these individuals had no such interest, the EPA waiver under the personal use exemption would never have been granted. Appellant knew this, and that is why he made use of documents with the intent to deceive Customs.

The government's argument is well taken. Title 18 U.S.C. § 1001 provides that it is against the law for a person to "knowingly and willfully falsif[y], conceal[ ] or cover[ ] up by any trick, scheme, or device a material fact, or make[ ] any false ... or fraudulent ... representation[ ]" as to

---

5. Title 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined ... or imprisoned ... or both.
   Title 18 U.S.C. § 1002 provides:
   Whoever, knowingly and with intent to defraud the United States, or any agency thereof, possesses any false, altered, forged, or counterfeited writing or document for the purpose of enabling another to obtain from the United States, or from any agency, officer or agent thereof, any sum of money, shall be fined ... or imprisoned ... or both.

6. 19 U.S.C. §§ 1303–1677k.

7. For support, Gardner cites 19 C.F.R. § 101.1(1), which defines "importer" as
   the person primarily liable for the payment of any duties on the merchandise, or an authorized agent acting on his behalf. The importer may be:
   (1) The consignee, or
   (2) The importer of record, or
   (3) The actual owner of the merchandise, if an actual owner's declaration and superseding bond has been filed in accordance with § 141.20 of this chapter, or
   (4) The transferee of the merchandise, if the right to withdraw merchandise in a bonded warehouse has been transferred in accordance with Subpart C of Part 144 of this chapter.

"any matter within the jurisdiction of any department or agency of the United States." The indictment states that Gardner caused the submission of Customs Forms and EPA Form 3520–1 for the purpose of importing non-conforming cars into the United States on the behalf of the individual owner/importer named in the indictment when in truth and fact Gardner knew the listed importer had no ownership interest in the cars; rather, Gardner was the true importer. We need not decide whether an ownership interest is required for a person to be a proper importer for all purposes. That inquiry is beyond the scope of this case. What is required is for us to determine whether, by purposefully creating the illusion that the named importers had some legal or financial interest in the vehicles, Gardner concealed a material fact as to a matter within the jurisdiction of an agency of the United States. We conclude that he did.

Under the EPA policy in effect at the time of the offenses charged, it was a material fact whether an importer of a foreign automobile that was five years old or older was an individual importing such an automobile for the first time for their personal use. Obviously, ownership is highly probative, if not determinative, of whether an automobile is being imported by an individual for the first time for their personal use. Gardner concocted a scheme to make it appear as if the named importer was the owner of the vehicle, that is, a person importing a foreign car for the first time for his own personal use. In reality, as charged in the indictment, Gardner was the true importer and it was Gardner who had the true financial interest in the vehicles. The cars were not being imported for the personal use of the named importer. Rather, Gardner would resell the vehicles without performing the costly conversion that would have been required but for the exemption granted by the EPA. Gardner's scheme was designed to conceal a material fact from the United States. While the

indictment might have been more carefully worded, it does adequately charge Gardner with a violation of 18 U.S.C. § 1001.

It is true that EPA Form 3520–1 and the mechanism for implementing the exemption policy could have been better designed.[8] However, it is no defense to a charge based upon deceit and trickery that the "scheme sought to be evaded is somehow defective." *See Dennis v. United States,* 384 U.S. 855, 866, 86 S.Ct. 1840, 1847, 16 L.Ed.2d 973 (1966).

AFFIRMED.

---

**8.** For instance, the Form in no place asks who the owner of the vehicle is or whether the named importer is a first-time importer or whether the importer intends to use the car for personal use. In fact, the exemption was apparently granted automatically by the EPA if the information it received on this Form caused the EPA to believe that the exemption applied.